UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:03CR264 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| GARY HARRIS | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Sixth Circuit remanded this matter for resentencing with specific instructions. Those instructions were:

> The district court must resentence Harris in accordance with this opinion, including the following four items. First, in calculating tax loss under U.S.S.G. § 2T1.1, the district court must receive evidence and determine Harris's gross income, not gross receipts, before applying the twenty percent and/or twenty-eight percent rates. Second, in determining relevant conduct under § 1B1.3, the district court may include Harris's nonpayment of state, local, and FICA taxes only if it determines that such nonpayment "amounts to an offense for which a criminal defendant could potentially be incarcerated" under the law of each jurisdiction, as required by *Shafer*, 199 F.3d at 831. Third, in determining whether Harris's offense level should be increased for obstruction under § 3C1.1, the district court must determine whether the alleged obstruction occurred "during the investigation, prosecution or sentencing of the instant offense[s] of conviction." Fourth, under *Booker*, the district court must treat the Guidelines as advisory only, and it must consider the recommended guideline range, the Commission's commentary, and the factors set forth in 18 U.S.C. § 3553(a). The district court should provide some record of its reasoning on each of these issues in case of further appellate review. *Till*, 434 F.3d at 887.

*U.S. v. Harris*, 200 Fed. Appx. 472, 499 (6th Cir. 2006). On July 17, 2009, this Court held Harris' resentencing and imposed an aggregate sentence of 110 months incarceration. This sentencing memorandum shall supplement the Court's oral statements regarding Harris' sentence.

**I. Advisory Guidelines**

The first issue before the Court on remand is centered upon the tax loss attributable to Harris' illegal conduct. The Circuit found error in this Court's initial sentencing because the Court used gross receipts rather than gross income when calculating tax loss. "Only by subtracting expenses from gross receipts can the court arrive at gross income-and it is a percentage of that latter number that must be used in the § 2T1.1 calculation." *Id.* at 496. Accordingly, upon remand, the Court held two evidentiary hearings to determine the proper amount of gross income.

In support of its burden, the Government introduced and subsequently amended Exhibit A (Doc. 525-2). In its exhibit, the Government indicated the income that it believed went unreported by Harris. In addition, the exhibit highlights the precise trial testimony that supports a finding that the income is properly attributable to Harris. The Court undertook a close review of the entire record of Harris' original trial and finds that the Government's calculations are exceedingly conservative. The Court believes that a substantially higher total unreported income could be attributed to Harris. However, out of an abundance of caution, the Court has adopted the Government's lower figure. The Government's figure is fully supported by the trial testimony and Government's Exhibit A (Doc. 525-2) is hereby incorporated herein.

The Court's next task involved converting the gross receipts to gross income by subtracting any appropriately supported expenses. In cases involving tax loss, the defendant bears the burden

of demonstrating the legitimacy of claimed expenses. *See U.S. v. Dale*, 991 F.2d 819, 856 (C.A.D.C. 1993). To that end, Harris offered no evidence.

To be clear, the Court granted Harris considerable leeway to present argument on remand. Harris took full advantage of that leeway. For hours on end, Harris asserted his innocence, claiming he engaged in "tax avoidance" and not tax evasion. Harris also detailed on numerous occasions the massive conspiracy that resulted in the charges against him. In so doing, Harris repeatedly indicated that the Government was in possession of all of his documentation that was necessary to prove the business expenses at issue. The Government candidly responded that it had possession of a substantial amount of Harris' documents, but that none of those documents were relevant to Harris' claimed expenses. Furthermore, when pressed on the issue of expenses, Harris resorted to simply claiming that running his large commercial buildings was very expensive.

The Court's review reveals one indisputable fact: Harris' multi-layered shell game of hiding his income and shifting his expenses makes any analysis nearly impossible. Fortunately however, the Court has no analysis to engage in to determine expenses. Harris has been unable to offer even conjecture about his legitimate business expenses. There has not been even a lay estimate of what expenses Harris claims to have incurred that would be used to legitimately reduce the *specific* unreported income at issue. Particularly troubling to the Court is Harris' repeated statements that *any* expenses associated to *any* of his numerous business ventures could be properly offset against income from *any other* business. This is the same type of activity that resulted in Harris' indictment in this matter.

Finally, the Court notes that the Government's calculation of tax loss resulted in a figure of $1,686,378, based upon unreported income of $8,431,890. Even if this Court were to apply

upwards of $3 million in expenses despite Harris' lack of evidence, the tax loss figure would still be in excess of $1 million. Accordingly, the Court finds that Harris' base offense level should be 22 pursuant to U.S.S.G. § 2T1.1.

The next issue for the Court to resolve on remand is whether to include Harris' nonpayment of state, local, and FICA taxes in his relevant conduct. The Government has abandoned this issue on remand. The Court, therefore, declines to include those facts in Harris' relevant conduct.

The third issue on remand revolved around this Court's determination of whether to enhance Harris' sentence due to obstruction under U.S.S.G. § 3C1.1. The Court declines to impose the enhancement.

There is no question in the Court's mind that Harris submitted false information in an affidavit provided to the Government. The Court, however, is hesitant to determine that Harris' activity took place during the investigation of this prosecution. Harris submitted the affidavit in response to his prior criminal conviction in an effort to comply with his plea agreement. Thus, the Court finds it debatable whether Harris' conduct is properly labeled as obstruction in the instant matter. As such, the Court relies upon the rule of lenity and declines to impose the enhancement.

Finally, in calculating the advisory guidelines, the Court enhanced Harris' offense level by 2 levels because of the sophisticated means used to commit the offense and an additional 2 levels because of Harris' role as a supervisor and/or leader in the criminal enterprise. Harris offered no argument in opposition to these enhancements, they were either affirmed or not challenged in the prior appeal, and they are amply supported by the record. Accordingly, the Court finds that Harris' offense level is a 26.

Coupled with his Criminal History Category of V, Harris' advisory guideline range was 110 to 137 months.

**II. Departure**

During the final resentencing hearing in this matter, Harris raised an issue with respect to his criminal history. Specifically, Harris opined that his history included several older convictions that occurred when he was a juvenile. The Court construed Harris' argument as a request for a downward departure on the basis that his criminal history substantially overrepresented the seriousness of his past offense. The Court adequately addressed Harris' motion on the record and finds no reason to expand on that analysis herein. The request for a departure was not well taken.

**III. § 3553 Factors**

The Court discussed the § 3553 factors at length when it handed down Harris' sentence. The Court again finds no reason to reiterate that analysis herein. As the Court previously stated, the underlying facts of this matter support a harsh sentence. Despite repeated prior convictions, Harris has not been deterred in his attempts to evade paying his taxes. As the Court noted, Harris clearly possesses high business acumen and has used that business sense to generate millions of dollars through numerous ventures. Despite his success in a market that exists due to government, Harris has refused to accept his responsibility to pay his taxes. Accordingly, a 110 month sentence is sufficient but not greater than necessary to fulfill the purposes of sentencing. For clarity, the Court imposes a 55 month sentence on count one, and a 55 month sentence on counts 2-4. The sentences on counts 2-4 shall run concurrent with one another and consecutive to

count 1 for a total sentence of 110 months.

To the extent that the Court's calculation of Harris' sentence differs from its oral pronouncement, the Court intends this order to fall with the purview of Fed. Rule of Crim.P. 35(a). The Court clarifies that Harris was sentenced to only 55 months on each count, with Count1 and Counts 2-4 to be run consecutively rather than concurrently. The effect of the Court's clarification does not "alter[] his total term of imprisonment." *U.S. v. Gray*, 521 F.3d 514, 544 (6th Cir. 2008). During the preparation of the journal entry of conviction, the Court realized that its 110 month sentence on each count exceeded the statutory maximum for those counts. The Court, therefore, clarifies that Harris' period of imprisonment that was announced shall remain the same, but this entry will serve to clarify and/or correct the Court's oral pronouncement. The Court finds authority for this action in *Gray*, 521 F.3d at 543-44.

If it has not been previously paid, Harris owes a $400 special assessment immediately. Moreover, the Court finds that Harris has the ability to pay a fine. Accordingly, Harris is hereby fined $27,000.

IT IS SO ORDERED.


August 6, 2009                             /s/ John R. Adams
                                           JUDGE JOHN R. ADAMS
                                           UNITED STATES DISTRICT JUDGE